2014 UT App 133

**BAY HARBOR FARM, LC, Plaintiff, Appellee, and Cross-appellant,**

v.

**Steven R. SUMSION, Defendant, Appellant, and Cross-appellee.**

No. 20120812–CA.

Court of Appeals of Utah.

June 12, 2014.

John L. Valentine, Steven R. Sumsion, and Kevin R. Worthy, for Appellant and Cross-appellee.

Stephen W. Geary and Adam M. Kaas, for Appellee and Cross-appellant.

Judge GREGORY K. ORME authored this Opinion, in which Judges J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.

Opinion

ORME, Judge:

¶ 1 Steven R. Sumsion appeals a district court order nullifying his lien under the Wrongful Lien Act. We reverse and direct the district court to dismiss Bay Harbor Farm's wrongful lien petition.

BACKGROUND

¶ 2 Bay Harbor Farm owns property in Utah County on which it operated a farm. In 2002, a farm worker was injured while working with a tractor on or near the farm. That worker subsequently brought a workers' compensation claim against Bay Harbor and Donald Proctor, a manager and forty-five-percent owner of Bay Harbor. Proctor

retained Sumsion, an attorney, to defend him against the workers' compensation claim. Sumsion provided Proctor with an engagement letter confirming that Sumsion would represent Proctor on "numerous matters involving Bay Harbor Farms and various personal matters." Proctor signed the letter twice, once on a line labeled "Donald Proctor," and again on a line labeled "Bay Harbor Farms, LLC, Don Proctor, Manager."

¶ 3 In 2006, Sumsion recorded a notice of attorney's lien on Bay Harbor's property because he had not been paid for his work on the workers' compensation matter. In June 2011, Bay Harbor demanded that Sumsion release his lien. Sumsion refused and sent documents to Bay Harbor that he believed supported the validity of his attorney's lien. Sumsion also recorded an amended notice of his lien, in which he maintained that his lien was a valid attorney's lien "in accordance with the provisions of Sections 38–2–7 et seq." of the Utah Code because Sumsion "was engaged and provided legal services at the request of and for Bay Harbor" and the property subject to his lien "was the subject of or connected with work performed by [Sumsion] for Bay Harbor."

¶ 4 Bay Harbor filed a petition in the district court to have Sumsion's lien declared wrongful under the Wrongful Lien Act. *See* Utah Code Ann. § 38–9–7 (LexisNexis 2010). Bay Harbor also requested and obtained a hearing in accordance with the Wrongful Lien Act. *See id.* § 38–9–7(3)(b).

¶ 5 The district court granted Bay Harbor's petition and nullified Sumsion's lien. It ruled that Sumsion's lien was a wrongful lien under the Wrongful Lien Act because it was not expressly authorized by statute. *See id.* § 38–9–1(6)(a) (stating that liens that are "expressly authorized by this chapter or another state or federal statute" are not wrongful liens). Sumsion appeals.

■ ¶ 6 Sumsion challenges the district court's interpretation of the Wrongful Lien Act. Whether a lien is wrongful under section 38–9–1 of the act is a question of law, and we therefore review the district court's determination for correctness. *See Pratt v. Pugh,* 2010 UT App 219, ¶ 7, 238 P.3d 1073; *Russell*

*v. Thomas,* 2000 UT App 82, ¶ 8, 999 P.2d 1244.

## ANALYSIS

¶ 7 The Wrongful Lien Act provides that "[a]ny record interest holder of real property against which a wrongful lien ... has been recorded may petition the district court in the county in which the document was recorded for summary relief to nullify the lien." Utah Code Ann. § 38–9–7(1) (LexisNexis 2010). However, a lien may be nullified through this type of expedited procedure only if, at the time the lien was recorded, it was not "expressly authorized by [the Wrongful Lien Act] or another state or federal statute." *Id.* § 38–9–1(6).

■ ¶ 8 Sumsion contends on appeal, as he did below, that because the Utah Code authorizes attorney's liens, his lien is expressly authorized by statute and therefore not subject to nullification in an expedited hearing under the Wrongful Lien Act. The district court, however, determined that Sumsion's lien was not authorized by statute. In reaching this conclusion, the district court analyzed the enforceability of Sumsion's lien under the attorney's lien statute. Quoting the statute, the district court explained that

> [t]he attorney lien statute requires two relevant elements: first, [Bay Harbor] must have been the "client" of [Sumsion] for the work performed; second, that the Property must have been "the subject of or connected with work performed for the client."

*See* Utah Code Ann. § 38–2–7(2) (LexisNexis 2010). The court then noted that it was "unable, upon this expedited proceeding, to find whether or not [Bay Harbor] was a client of [Sumsion]" for the work performed on the workers' compensation case. But the court did find that the Bay Harbor property "was not the subject of or connected with [Sumsion's] work on the [workers' compensation] matter." The district court then concluded that because Sumsion's lien was unenforceable as an attorney's lien under section

38–2–7, it was a wrongful lien under the Wrongful Lien Act and "void ab initio." [1]

¶ 9 The Utah Supreme Court considered this issue under factually similar circumstances in *Hutter v. Dig–It, Inc.*, 2009 UT 69, 219 P.3d 918. In *Hutter*, the parties disputed the meaning of the phrase "expressly authorized by . . . statute" found in the Wrongful Lien Act. *Id.* ¶ 46. The lien claimant contended that "because the right to file a mechanic's lien is granted by statute, all mechanic's liens—even if they ultimately prove unenforceable—are expressly authorized by statute and therefore are not wrongful liens." *Id.* The property owners, however, argued "that an unenforceable lien cannot be expressly authorized by statute since the statute only allows liens to be recorded that comply with the statutory terms." *Id.*

¶ 10 The *Hutter* court concluded that the phrase "expressly authorized by . . . statute" was ambiguous and therefore turned to the statute's legislative history for guidance. *Id.* ¶ 49. The court then focused on one particular legislative exchange sparked by a concern that Senator Richard Carling raised about the Wrongful Lien Act: " '[I]t appears [to go] to all liens, not just common law liens' " and " 'somebody might think that they have a valid lien against somebody, they're going to file a lien and it might be determined invalid.' " *Id.* ¶ 50 (quoting Senate Floor Debate, S.B. 178, 42nd Leg., Gen. Sess. (February 21, 1985) (statement of Senator Carling)). After recounting several other senators' responses to Senator Carling's misgiving, the Supreme Court held, "This legislative history makes clear that the legislature intended that the definition of 'wrongful lien' should encompass only common law liens. Therefore, we conclude that the phrase 'not expressly authorized by . . . statute' in the Wrongful Lien Act does not include statutorily created liens," even those "that ultimately prove unenforceable." *Id.* ¶ 52. The Court then concluded that because the lien claimant "filed a mechanic's lien, which is expressly authorized

by statute, the lien, though unenforceable . . . , is not wrongful." *Id.*

¶ 11 Closely analogous to the circumstances presented in *Hutter*, Sumsion filed an attorney's lien, which is expressly authorized by statute, and it is therefore not wrongful. This is true even if it ultimately proves unenforceable, whether because Bay Harbor was not Sumsion's client, because the Bay Harbor property was unconnected to the workers' compensation claim, or on some other basis. But an expedited hearing under the Wrongful Lien Act is not the right vehicle for analyzing the lien's enforceability under the attorney's lien statute. *See* Utah Code Ann. § 38–9–7(4) (LexisNexis 2010) ("A summary proceeding under this section is only to determine whether or not a document is a wrongful lien. The proceeding shall not determine any other property or legal rights of the parties nor restrict other legal remedies of any party.").

¶ 12 This is not to say that a lien claimant may escape the reach of the Wrongful Lien Act simply by alleging that his or her lien is "expressly authorized by statute." *See Hutter*, 2009 UT 69, ¶ 52, 219 P.3d 918. Although a court may not, within the context of a summary proceeding under the Wrongful Lien Act, analyze whether a statutory lien is ultimately enforceable, it may consider whether a lien claimant has a good-faith basis for claiming a statutory lien. The legislative history cited by the Supreme Court in *Hutter* supports this conclusion. Senator Carling expressed his concern about the scope of the Wrongful Lien Act only as it applies to the lien claimant who rationally believes he has a valid statutory lien but who might have it nonetheless declared wrongful at an expedited proceeding. *See id.* ¶ 50. Conversely, if a lien claimant has no plausible claim to the property that is the subject of the lien, a court may declare the lien wrongful under the Wrongful Lien Act even if it purports to be one falling into the category of statutorily authorized liens.[2] For example, a person

---

1. The district court reserved the question of Bay Harbor's "entitlement to costs and reasonable attorney fees, pursuant to Utah Code § 38–9–7(5)(a), . . . for later decision."

2. It is also a felony for an individual to file a lien while "having no objectively reasonable basis to believe he has a present and lawful property interest in the property or a claim on the assets." Utah Code Ann. § 76–6–503.5 (LexisNexis 2012).

who is not an attorney could have no plausible basis for recording an attorney's lien; a dentist who repaired a patient's crowns would have no basis for recording a mechanic's lien against the patient's residence.

¶ 13 We conclude that Sumsion had a sufficiently plausible good-faith claim that his lien complied with the requirements of the attorney's lien statute to insulate it from nullification under the Wrongful Lien Act. For purposes of a summary proceeding under the Wrongful Lien Act, Sumsion has a plausible claim that (1) Bay Harbor was his client and (2) Bay Harbor's farm property was "the subject of or connected with work performed for the client." [3] See id.

¶ 14 First, Sumsion apparently understood that he was performing work for Bay Harbor as well as for Proctor individually. The record contains an engagement letter from Sumsion that, with our emphasis, confirms Sumsion's representation "on numerous matters involving Bay Harbor Farms *and* various personal matters." Proctor signed the letter in his individual capacity and also signed on behalf of "Bay Harbor Farms, LLC," in the stated representative capacity, "Manager." While Bay Harbor contends that it is not bound by this letter, its mere existence is enough to give Sumsion a plausible claim that Bay Harbor was his client. Whether or not Bay Harbor was actually Sumsion's client should be evaluated in a proceeding other than an expedited wrongful lien hearing, upon consideration of any relevant evidence the parties may present.

¶ 15 Second, Sumsion had a plausible claim that the property subject to his lien was "connected with work performed" in handling the workers' compensation matter. The district court interpreted this language quite narrowly, noting, "Even though this alleged injury occurred on the land, the state of the land was not [the] subject of part of the lawsuit." However, the statute includes the phrase "connected with" in addition to the phrase "the subject of," indicating that the statute was meant to cover more than those cases where the land is the actual subject of the lawsuit. See Utah Code Ann. § 38-2-7(2). See also State v. Morrison, 2001 UT 73, ¶ 11, 31 P.3d 547 (noting our fundamental duty to give effect to every word of a statute, avoiding "any interpretation which renders parts or words in a statute inoperative or superfluous") (citation and internal quotation marks omitted). For example, although a parcel of real property would not be "the subject of" a premises liability lawsuit in the same way that it would be in an action to quiet title to that same parcel of property, the property where the injury occurred is certainly "connected with" any work performed on such a case. While the district court could ultimately find that the workers' compensation matter here was not sufficiently "connected with" Bay Harbor's property and thus find the lien unenforceable, Sumsion at least had a plausible claim that his work was connected with Bay Harbor's land, and therefore the lien's creation was expressly authorized by statute for purposes of the Wrongful Lien Act.[4]

## CONCLUSION

¶ 16 The phrase "not expressly authorized by statute" in the Wrongful Lien Act does not include statutorily created liens that may ultimately prove unenforceable. In the context of an expedited proceeding under the Wrongful Lien Act, a district court may only consider whether a statutory lien claimant has a plausible good-faith basis for claiming that the lien is authorized by statute. In this case, Sumsion had a plausible good-faith claim for recording his statutory attorney's lien. Therefore, we reverse the district court's order nullifying Sumsion's lien. On remand, the district court "shall dismiss the petition and may award costs and reasonable

---

3. This does not mean that Bay Harbor may not still challenge Sumsion's lien as unenforceable under the attorney's lien statute in an appropriate proceeding. See Utah Code Ann. § 38-9-7(4) (LexisNexis 2010) ("A summary proceeding under this section ... shall not determine any other property or legal rights of the parties *nor restrict other legal remedies of any party.*") (emphasis

added). See also id. § 38-2-7 (attorney's lien statute).

4. Because we reverse the district court's order, we need not reach the remaining issues raised in Sumsion's appeal or Bay Harbor's cross-appeal.

attorney's fees to [Sumsion]." Utah Code Ann. § 38–9–7(5)(c) (LexisNexis 2010).